UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Scotty Wilson, | ) | C/A No. 4:09-543-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| Mr. Eldon Wyatt (CEO); | ) | |
| Chief Pledger; | ) | |
| Lt Mclease; | ) | |
| C.N.A. Jerlean Clisby; | ) | |
| Nurse Karen Drake, | ) | |
| C.O.Hunter; | ) | |
| C.O. Nelson, | ) | |
| | ) | |
| Defendants. | ) | |

## **I. PROCEDURAL HISTORY**

The *pro se* plaintiff filed this complaint under 42 U.S.C. § 1983[1] on March 6, 2009, alleging violations of his constitutional rights. At all times relevant to the allegations in the complaint, plaintiff was incarcerated at Columbia Regional Care Center ("CRCC"). Defendants filed a motion for summary judgment on September 29, 2009. The undersigned issued an order filed November 16, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On December 11, 2009, plaintiff filed a response in opposition to the motion for summary judgment.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II. DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material

fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### B. ALLEGATIONS/ARGUMENTS/ANALYSIS

In the complaint, plaintiff states he is bringing this action based on "assault, harrassmont[sic] & medical malgeasanat[sic]." (Doc. #1). Specifically, plaintiff alleges that he was physically assaulted by defendant Jerlean Clisby, a nursing assistance at Columbia Regional Care Center where he is confined. Plaintiff alleges that Defendant Clisby punched him several times in the chest while taking his vital signs. Plaintiff asserts that defendant Clisby accused him of pinching her after she repeatedly placed his hand on her breast while she was taking his vital signs. Plaintiff further alleges that defendant Clisby admitted to punching him in the chest numerous times to Lt. McClease.[2] After the alleged assault, plaintiff contends that he filed a grievance and defendant Clisby began to harass

---

[2] Plaintiff cited the name as "Mclease" in this complaint. This defendant filed an affidavit in which he stated the correct spelling of his name is McClease. Therefore, this defendant will be referred to in the report and recommendation as "McClease." (See McClease affidavit).

him and recruited others to pressure him to stop the grievance.[3] Plaintiff requests monetary damages and that defendant Clisby be held accountable and disciplined for her actions.[4] (Complaint).

Defendants filed a motion for summary judgment along with several affidavits and exhibits. Defendants submitted the affidavit of Eldon Wyatt ("Wyatt"), an employee of Just Care, Inc., ("Just Care") which contracts to provide detention health care, nursing care, some physician care and security services for numerous government agencies at CRCC. (Wyatt affidavit, doc. #33-1). CRCC is where plaintiff was in custody at the time of the events alleged in the complaint which is leased

---

[3] Liberally construed, if plaintiff is attempting to allege a cause of action for retaliation, it would fail. To state a claim of retaliation under § 1983, a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

An inmate must also present more than conclusory accusations of retaliation, Id. at 74, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. See, e.g., Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996); Hughes v. Bledsoe, 48 F.3d 1376, 1387 n. 11 (4th Cir.1995). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. American Civil Liberties Union, Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993).

In the instant action, Plaintiff alleges that he suffered from harassment by employees of CCRC because he utilized the institutional grievance system. However, inmates have no constitutionally protected right to a grievance procedure. See Adams v. Rice, supra.; Blagman v. White, 112 F.Supp.2d 534, 542 (W.D.Va.2000) (inmate has no constitutional entitlement to grievance procedure); Ashann-Ra v. Commonwealth of Virginia, 112 F.Supp.2d 559, 569 (W.D.Va.2000) ("a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983"). As Plaintiff has failed to allege that the Defendants' acts were taken in response to the exercise of a constitutionally protected right, any possible retaliation claim plaintiff may be attempting to make against the Defendants is not cognizable under 42 U.S.C. § 1983, and is subject to summary dismissal.

[4] As part of his relief, plaintiff requested that the court discipline Clisby for her actions. This is not a proper request before the court. See Maxton v. Johnson, 488 F.Supp. 1030, 1032, n. 2 (D.S.C.1980), citing United States v. White County Bridge Commission, 275 F.2d 529, 535 (7th Cir.) [a federal district court lacks the inherent power to hire or remove officials not within the executive control of that federal district court], *cert. denied sub nomine*, Clippinger v. United States, 364 U.S. 818, 81 S.Ct. 50, 5 L.Ed.2d 48 (1960).

4

from the South Carolina Department of Mental Health ("SCDMH")and Just Care and SCDMH entered into a contract in which SCDMH agreed to provide physicians for CRCC in exchange for Just Care providing nursing and staff services at the facility. (Id.). Just Care is not an agency of the State of South Carolina and the State of South Carolina does not participate in the management of the CRCC or manage the actions of Just Care. (Id.). CRCC is privately managed by Just Care. (Id.). Wyatt is the General Manager of CRCC and, in this role, he provides supervision of Just Care's employees at CRCC and is responsible for the overall operation of the facility, the administration of services, and for working in coordination with the medical, security, maintenance and administrative staffs. (Id.). Wyatt is familiar with plaintiff through his position as General Manager and a review of the complaint reveals plaintiff has not made any allegations against Wyatt by name. (Id.). To the extent plaintiff has made any allegations in the complaint against him, Wyatt denies them. (Id.). Wyatt has no knowledge of plaintiff being physically assaulted by defendant Clisby on or about February 9, 2009, and is not aware of any evidence to substantiate the claim other than a grievance filed by plaintiff. (Id.). No one has reported any allegations of an assault on plaintiff.(Id.). Wyatt has not harassed or pressured plaintiff and has never been asked to do so by defendant Clisby. (Id.). Other than the grievance filed by plaintiff, no one has ever reported to Wyatt that plaintiff has been harassed or pressured as a result of an alleged assault. (Id.). Plaintiff has received good care, treatment and attention at CRCC and no actions have been taken at any time to cause any harm to plaintiff consistent with the allegations in his complaint.(Id.).

Defendants submitted the affidavit of Dewey Pledger ("Pledger") who attests that he is an employee of Just Care at the CRCC and has held the position of Chief of Security since 2001 which includes supervising and managing all security functions at CRCC. (Pledger affidavit, doc.#33-3).

5

Pledger attests that plaintiff is "a complainer and likes to horseplay with staff and other CRCC patients. He is also manipulative and he thinks he is being harassed or singled out when staff forces him to follow CRCC's rules." (Id.). A review of the complaint indicates that plaintiff has not made any allegations against Pledger by name, but, to the extent he has made any allegations, Pledger denies them. (Id.). Pledger has no knowledge of plaintiff being physically assaulted by defendant Clisby on or about February 9, 2009, and is aware of no evidence to substantiate this claim other than a grievance filed by plaintiff. (Id.). Pledger has not harassed or pressured plaintiff, defendant Clisby has never asked him to harass or pressure plaintiff, no one has ever reported to Pledger that they have been recruited by defendant Clisby to harass or pressure plaintiff, and other than the grievance filed by plaintiff, no one has ever reported to him that plaintiff has been harassed or pressured as a result of an alleged assault. (Id.). Pledger has no role in the provision of medical care of plaintiff or any other residents at CRCC. (Id.).

Defendants submitted the affidavit of Bruce McClease ("McClease") who attests that he is identified in the complaint as "Lt. McLease" but his name is Bruce McClease. (McClease affidavit, doc. #33-4). He is an employee of Just Care at the CRRC where he is a Lieutenant and Assistance Chief of Security. (Id.). McClease is familiar with plaintiff through his position as Assistant Chief of Security at CRCC and has a good rapport with plaintiff generally following his directions and instructions. (Id.). However, plaintiff can be a problem for staff and is not always compliant when other staff gives him directions and instructions. (Id.). Plaintiff is an instigator and tries to get his way with things, likes to break rules to see how far he can push things, and if held to the rules by the staff, he thinks he is being harassed, singled out, and picked on. McClease attests that he has no knowledge of plaintiff being physically assaulted by defendant Clisby on or about February 9, 2009,

6

and is aware of no evidence to substantiate the claim. (Id.). After the alleged incident, McClease reviewed the security videotape and saw nothing to substantiate plaintiff's claim that defendant Clisby physically assaulted him. (Id.). Soon after the incident, defendant Clisby reported that plaintiff pinched her and she reacted by slapping his hand away but never told him that she punched plaintiff in the chest numerous times as alleged by plaintiff in the complaint. (Id.). After the incident, defendant Clisby was moved to Unit 3 from Unit 4 for her own safety.(Id.). Defendant Clisby has never asked McClease to harass or pressure plaintiff, he has never harassed or pressured plaintiff, and no one has ever reported to him that defendant Clisby attempted to recruit them to harass or pressure plaintiff and defendant Clisby has never asked him to have plaintiff placed on lock down. (Id.). McClease is not responsible for and has no role in the provision of medical care to plaintiff or any other residents at CRCC and has no knowledge that substantiates any of the claims made by plaintiff.(Id.).

Defendants submitted the affidavit of Jerlean Clisby ("Clisby") who attests that she is employed by Just Care, Inc., at the CRCC as a Certified Nursing Assistant ("CNA") and has been a CNA at CRCC since January 2006. (Clisby affidavit, doc. #33-5). Her job is to provide personal care to patients at CRCC, including taking vital signs and assisting with meals. (Id.). Prior to coming to work at CRCC, plaintiff was a CNA/mental health specialist at the South Carolina Department of Mental Health for twenty-nine (29) years. (Id.). Clisby is familiar with plaintiff through her position as a CNA as plaintiff is housed on the third floor at CRCC which is the floor she worked until February 2009. (Id.). Plaintiff likes to have things his way and reacts poorly when staff at CRCC makes him follow the rules. (Id.). Plaintiff has a bad relationship with some of the staff at CRCC because of his actions, but she had a good relationship with him until or about February 9,

2009. (Id.). Plaintiff used to call Clisby "mom" and they got along fine until he pinched her on or about February 9, 2009. (Id.). On February 9, 2009, another patient was discharged from CRCC in the morning while the patients were getting their breakfast trays so that the discharge of the patient left an extra breakfast tray which plaintiff wanted. (Id.). Clisby told plaintiff that she would not allow him to have the tray because it was against the CRCC rules when plaintiff told her she "needed to have my 'butt kicked' for not giving him the extra tray." (Id.). About thirty minutes to one hour after breakfast, Clisby was taking plaintiff's blood pressure and putting the blood pressure cuff on his left forearm when plaintiff reached up and pinched her hard on her left forearm without any warning leaving two visible bruises. (Id.). When he pinched Clisby, she reacted and slapped his hand to try and make him stop. In the process of doing this, Clisby inadvertently touched plaintiff's chest with her hand while attempting to make him stop pinching her.(Id.). After plaintiff pinched Clisby, she was moved off of plaintiff's unit to the fourth floor for her own safety. (Id.). Clisby did not attempt to have plaintiff locked down, did not place his hand on her breast while taking his vital signs, and did not admit to Lt. McClease that she punched plaintiff numerous times in the chest. (Id.). Clisby showed Lt. McClease the bruises on her forearm where plaintiff pinched her and told Lt. McClease that she reacted and slapped at plaintiff's hand to try to make him stop pinching her and inadvertently touched plaintiff's chest in the process. (Id.). Clisby attests she has not harassed plaintiff since the incident, has not recruited other CRCC staff members to harass or pressure plaintiff since the incident, has always provided good nursing assistant care to plaintiff, and is not aware of him receiving deficient medical or nursing care at CRCC. (Id.).

Defendants submitted the affidavit of Karen Drake ("Drake") who attests she is an employee of Just Care and has worked at the CRCC for four years. Drake is a registered nurse and is the Nurse

8

Manager for Unit 3 and Unit 4 which requires her to supervise all nursing staff on these Units. (Id.). Drake is familiar with plaintiff through her position as Nurse Manager of Unit 3 at CRCC where plaintiff is housed. (Id.). Drake has a good rapport with plaintiff but plaintiff gives a lot of the staff a hard time and is disrespectful to them, very controlling and non-compliant with directions and instructions to them. (Id.). Plaintiff wants to run Unit 3 and he bullies people including his roommates if he thinks they are not going to give him his way. (Id.). On one occasion, plaintiff punched a wheelchair bound roommate and broke his nose just because he irritated him. (Id.). Drake is also familiar with Clisby who has worked on both Unit 3 and Unit 4, has supervised CNA Clisby, who in Drake's opinion is an excellent CNA. (Id.). A review of the complaint reveals that plaintiff has not made allegations against her by name but denies any that he may have made. (Id.). Clisby has no knowledge of plaintiff being physically assaulted by Clisby on or about February 9, 2009, and is aware of no evidence to substantiate the claim. Soon after the incident and on the day it occurred, Clisby showed Drake a bruise on her arm that she said was caused by plaintiff pinching her and told her plaintiff was upset because she would not give him an extra breakfast tray so her pinched her. (Id.). Clisby told Drake that when plaintiff pinched her, she just reacted and slapped his hand away. (Id.). After this incident, Clisby was moved to another unit for her own safety and has never asked Drake to harass or pressure plaintiff or to have plaintiff placed on lock down. (Id.). Drake has always provided good nursing care to plaintiff and is not aware of him receiving deficient medical or nursing care at CRCC. (Id.).

Defendants submitted the affidavit of Roxy Hunter Pipersburg (Pipersburg) who attests that she is identified as defendant C.O. Hunter in the complaint and she is an employee of Just Care and works at the CRCC where she is a Care Officer. (Pipersburg affidavit, doc. 33-7). This job requires

9

that she provide security services at CRCC. (Id.). Pipersburg is familiar with plaintiff through her position as a Care Officer at CRCC where plaintiff thinks the rules and regulations do not apply to him. (Id.). Plaintiff is generally very disrespectful to staff members at CRCC and does not like to take orders from anyone, especially female staff members. (Id.). She has reviewed plaintiff's complaint and denies any allegations against her. (Id.). Pipersburg attests that she has no knowledge of plaintiff being physically assaulted by Clisby on or about February 9, 2009, and is not aware of any evidence to substantiate plaintiff's allegations. (Id.). Clisby has never asked Pipersburg to harass or pressure plaintiff, and Pipersburg has never harassed or pressured plaintiff. (Id.).

Defendants submitted the affidavit of Janelle Nelson ("Nelson") who attests that she is the defendant identified as C.O. Nelson and is an employee of Just Care, Inc. at the CRCC as a Care Officer. Nelson's job is to provide security services at CRCC. (Id.). Nelson is familiar with plaintiff through her position and asserts plaintiff is generally disrespectful to staff members at CRCC and his actions are especially inappropriate towards female staff members. (Id.). Nelson attests that plaintiff has "intimate[d] that he wants to have sex with me and other female staff members. Scotty is very often non-compliant with directions from staff members." (Id.). Nelson is not comfortable being alone with plaintiff because of his actions towards female staff members. (Id.). Nelson has reviewed the allegations in the complaint and has no knowledge of plaintiff being physically assaulted by Jerlean Clisby, CNA on or about February 9, 2009, and is not ware of any evidence to substantiate his claim. (Id.). Nelson is not responsible for and has no role in the provision of medical care to plaintiff or any other residents at CRCC. (Id.). Nelson has no knowledge that substantiates any of plaintiff's claims. (Id.).

Plaintiff makes no allegations that any defendants other than Ms. Clisby assaulted him and does not allege any specific act or conduct by defendants Wyatt, Pledger, McClease, Drake, Roxy Hunter Pipersburg, and Nelson that any of them were personally involved in, or directly responsible for, the alleged assault. Although plaintiff references, McClease, Hunter and Nelson by name in the complaint, there are no substantial allegations against them. The grievance form plaintiff submitted along with his complaint only mentions defendant Clisby, and in the response to the motion for summary judgment, plaintiff again only mentions defendant Clisby. (Doc. #1-1 and #36). In absence of substantive allegations of wrongdoing against a named defendant, there is nothing from which this Court can liberally construe any type of viable cause of action arising from the Complaint. It is well settled that federal courts performing their duties of construing *pro se* pleadings are not required to be "mind readers" or "advocates" for state prisoners or *pro se* litigants. *See* Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Therefore, it is recommended that summary judgment be granted as to defendants Wyatt, Pledger, McClease, Drake, Roxy Hunter Pipersburg, and Nelson.

Defendants further argue that they did not deprive plaintiff of any rights secured by the constitution or laws of the United States. Defendants assert plaintiff only alleges liability arising out of traditional tort law principles, i.e. assault, harassment, and "medical Malgeasanat." Thus, defendants contend there are no allegations that defendants deprived plaintiff of any rights secured by the Constitution and has no cognizable claim under Section 1983. (Memorandum).[5]

---

[5] Defendants assert that plaintiff is a prisoner confined at the CRCC which is a privately managed detention center and individual confined by various government agencies receive healthcare services as the facility. Just Care, Inc., manages CRCC and all of the defendants are employees of Just Care. Therefore, defendants assert that they did not act under color of state law arguing that the Fourth Circuit has stated that employees of a privately managed correctional facility do not act under color of state law for purposes of a Section 1983 action *citing* Holly v. Scott, 434

The undersigned notes that the plaintiff has alleged only claims for assault, harassment and "medical malgeasanat."[6] He does not reference federal law or § 1983 anywhere in his complaint. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must first allege a violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42,

---

F.3d 287 (4th Cir. 2006).

This report and recommendation does not reach this issue based on the recommendation that this action be dismissed for other reasons. However, this court would note that this issue appears to be an open one in the Fourth Circuit. See Holly v. Scott, 434 F.3d 287, 292 n.3 ("It is an open question in this circuit whether §1983 imposes liability upon employees of a private prison facility under contract with the state. We need not decide that issue here.").

[6] Plaintiff fails to state any allegations with regard to medical malpractice, medical negligence or medical indifference in the complaint. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).

Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise.")

48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). As the plaintiff has not done this, the undersigned concludes that he has not stated a 1983 cause of action.[7]

### III. CONCLUSION

Based on the above reasoning, it is RECOMMENDED that the motion filed by defendants (doc. #33) for summary judgment be GRANTED IN ITS ENTIRETY.

Respectfully submitted,

June 23, 2010  
Florence, South Carolina

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

**The parties' attention is directed to the important information on the attached notice.**

---

[7] Even in the alternative if the court was to consider diversity jurisdiction, it is unclear the citizenship of Just Care, Inc., and plaintiff has not alleged diversity jurisdiction. In addition, in light of the fact that plaintiff requested $25,000.00 as monetary relief in the complaint, this court cannot conclude the amount in controversy requirement has been met for purposes of diversity jurisdiction.